475 P.2d 752

STATE of Arizona, Appellee,

v.

James Clayton HUNT, Appellant.

No. 1 CA–CR 249.

Court of Appeals of Arizona, Division 1.

Oct. 26, 1970.

Rehearing Denied Dec. 3, 1970.

Review Denied Jan. 26, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Mathis Becker, Phoenix, for appellant.

HATHAWAY, Judge.

In 1968, the appellant was convicted of first degree burglary, imposition of sentence was suspended for a period of four years on certain specified terms and conditions, including the condition that he be "a law abiding citizen." Subsequently, on July 22, 1969, pursuant to the request of the adult probation officer, appellant was arrested and was held for the purpose of a revocation hearing.

On September 2, a brief hearing was conducted at which time appellant's counsel requested that the hearing be continued for one week. He indicated to the court that circumstances had prevented him from making a full investigation so as to determine whether or not to call appellant's wife or appellant as witnesses and they had not yet had an opportunity to read the

probation officer's report. He did present testimony of one witness, the owner of a tire mart, who expressed his willingness to employ the appellant notwithstanding his criminal record. The court continued the hearing on revocation to the following week, September 9, 1969.

At the September 9th hearing, two adult probation officers testified as did the appellant's wife. One probation officer testified that he had no knowledge of appellant's ever having committed an act of violence. Mrs. Hunt testified that she had remarried the appellant since the last hearing in this matter. She also testified that the probation officer who was handling appellant's case had told her that she was to feel free to consult with him at any time a problem should arise. She testified that she had consulted him:

"Q. All right. The problem was that Mr. Hunt at that time was creating some problems as a result of some drinking?

A. In our home.

Q. And there had been a notion that you had been struck?

A. Right.

Q. Now, without going into all of the details, you gave Mr. Willoughby, [probation officer] did you not, basically the facts of what happened?

A. Yes, I did.

Q. All right. Now, you have had occasion to have Mr. Willoughby read his report of that occurrence to you?

A. I assumed he was reading it. I asked him where he got the information. He said, 'I have it here in my report.'

Q. And was it what you have heard related to you the information?

A. None whatsoever.

Q. All right. In what respects did your information you provided him differ from that which you did in fact provide him or that which you heard?

A. He related to me that I had told him that I was afraid of Jim, threatened my life, and that he was capable of murdering me.

Q. And was that in fact told to him?

A. I did not."

The court also inquired into this incident:

"THE COURT: Were the police called on this incident with Mr. Hunt?

A. Early in the morning hours, I talked to them.

THE COURT: You called the police?

A. Not at the house.

THE COURT: Well, the police came out and investigated, didn't they?

A. No, they came and talked to me. They never did talk to Jim. They never even did go to the house with me.

THE COURT: They came out and talked to you?

A. Yes.

THE COURT: Because you called them?

A. Yes, I did.

THE COURT: What did you tell the police officers?

A. I only asked them, seeing as there was a disagreement between us, I felt is was necessary that maybe if I left the house for the remainder of the night, got a motel, or what have you, everything would be fine the next morning, and I wanted them to go to the house with me to get some clothes.

THE COURT: Did they go with you?

A. No.

THE COURT: Did you tell them that Mr. Hunt had struck you on the head?

A. He asked me what was the matter with my head.

THE COURT: Mr. Hunt?

A. In a scuffle, I was hit."

Mr. Willoughby, the probation officer, told the court that this matter came to his attention as follows:

"Well, Mrs. Hunt came in dressed in her shorts and her short-sleeved kind of a sweater affair, and obviously had been bruised by something; bruises about the shoulder and about the arms, and she also had quite a contusion on the side of her head, and looked like someone had taken their finger and depressed it. It was quite a little contusion, and she was excitable, emotional in regard to her husband, and she said that she had to have something done about Jim. What could she do about him? She said, 'I've got to get a peace bond, get him to leave me alone. He's threatened me. I think he's going to do me great harm.' There were words to that effect, and I told her that we had gone through this several times before. Once, not very long ago in reference to a hearing and that I thought really that what we were getting into was a rather serious domestic problem, but I told her that I could do more than get a peace bond, that she was talking to a representative of the Judge, and that if I thought for one second that this man had threatened and had threatened to use a .45 automatic that he kept saying was hid in the house, and she kept saying, 'I hope he hasn't found it, but I hid it, and that's what he hit me with, was a .45 pistol.'

* * * but I have no other complaints regarding his conduct outside of this particular incident, but I'll point out to the Court, like I did to the wife, that when a man threatens to kill a woman, threatens to do violence, and she's in my office, and says she can't go home for two days, what is she going to do, 'For God's sake help her' I think we should call the police immediately and that's what I did."

The appellant did not testify in his own behalf at the revocation hearing. The court revoked the appellant's probation, which is the subject of this appeal, and sentenced him to a term of not less than two nor more than three years in the Arizona State Prison. The court stated to him:

"When you were found guilty in—I think it happened clear back in 1967. * * * The sentencing was February 1, 1968. You, at that time were serving time at the Federal Prison system, and on the basis of your record that would have been the only consideration I would have sentenced you to additional time. I was persuaded at that time, because of the obvious in the interest of Mrs. Hunt that she might be able to help you out. If you recall, I placed you on probation at that time, and took into consideration that you were serving time in New Mexico or Texas Federal Detention Camp. Now, in July, we had a hearing because a bunch of checks had been passed around town which were subsequently picked up by Mrs. Hunt. Because there was no complaint issued, I decided to do nothing. Now, here we are again today, and this time you cuffed Mrs. Hunt around, bruised her, and I frankly feel I must revoke your probation. * * *"[1]

On appeal, the appellant contends that the evidence presented to the lower court did not justify revocation of probation and that he was deprived of his constitutional right of confrontation and cross-examination in that the court relied upon information in the probation officer's file.

This court recently discussed the right of an individual at a revocation of probation hearing. State v. Walter, 12 Ariz.App. 282, 469 P.2d 848 (1970). We pointed out that such proceeding is not subject to the limitations of a trial and is not governed by the same rules. We believe the following statement in Scott v. State, 238 Md. 265, 208 A.2d 575 (1965), is pertinent:

"Probation is a matter of grace, which aside from being an act of clemency extended to one who has committed a crime, is in substance and effect a bargain made

1. The minute entries reflect that on July 22, 1969, a hearing was held on revocation of probation at which time the court decided to continue appellant on probation.

by the people, through legislation and the courts, with the malefactor that he may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society. It offers the young or unhardened offender an opportunity to rehabilitate himself without confinement under the tutelage of a probation officer and there may be attached to the opportunity the condition that it may be ended, if the court is reasonably persuaded, by knowledge of facts, even if obtained more informally than the rules of evidence would permit it to be obtained in a trial, that it should be. Probation is a personal privilege of which the grantee may not be deprived arbitrarily or capriciously, but if one charged with breach of probation is given notice of the charges of violation of the conditions and the opportunity to answer or explain the facts which have come to the knowledge of the judge, even though not in the manner required by the rules of evidence, and the facts justify revocation, the act of revocation is not arbitrary or capricious.

In the determination of a proper sentence a judge may utilize information obtained outside the courtroom, information furnished by those not subject to cross-examination and sometimes hearsay (provided that information not received from or in the presence of the defendant should be called to his attention so that he has the opportunity to refute, discredit or explain it—unless under Md. Rule 761 D the court directs otherwise as to a presentence report). [citations omitted] There is clearly a similarity between the process of determining a proper sentence originally and the process of determining whether to revoke probation and reinstate or impose a sentence, and the judge in the latter instance may, with similar safeguards, utilize the ways of acquiring knowledge bearing on the problem that the judge utilizes in determining a proper sentence originally.

The facts presented to or coming to the knowledge of the judge, as to the breach of the conditions of probation, need not establish guilt beyond a reasonable doubt as in criminal offenses; all that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." 208 A.2d at 580–581.

■■ We find that appellant was given adequate notice of the reasons which led the trial judge to contemplate revocation of probation and of the facts which underlay those reasons, that he had the advice of counsel and a reasonable opportunity, under the circumstances, to refute or explain the assault on Mrs. Hunt. Appellant contends, however, that the only evidence to substantiate commission of the assault was the testimony of Mr. Willoughby which was hearsay and repudiated by Mrs. Hunt. It is apparent that the trial judge was dubious as to Mrs. Hunt's credulity and appellate courts, in determining whether evidence warrants revocation, defer to the trial judge's determination as to matter of credibility. State v. Robinson, 248 N.C. 282, 103 S.E.2d 376 (1958). Even if Mr. Willoughby's testimony with regard to the assault was hearsay, it is not objectionable on that grounds where appellant was afforded an opportunity to cross-examine Mr. Willoughby, was represented by competent counsel and was afforded an opportunity to rebut or explain away the claimed assault. State v. Riddell, 75 Wash.2d 85, 449 P.2d 97 (1968); Scott v. State, supra.

■■ When, as here, the trial judge is satisfied, from the facts presented, that the probationer has committed an assault, he is justified in concluding that the conditions of probation have been violated. Jackson v. State, 165 Tex.Cr.R. 380, 307 S.W.2d 809 (1957); Roberts v. State, 363 S.W.2d 261 (Tex.Cr.App.1962); People v. Wilson, 230 Cal.App.2d 475, 41 Cal.Rptr. 153 (1964). Since the record of the revocation hearing indicates that the trial court had already overlooked one infraction of the probation conditions and had afforded appellant every opportunity to prove himself worthy of

rehabilitation, and since there was evidentiary support for revoking probation, we cannot say that discretion has been abused. We therefore deem it unnecessary to consider appellant's claim that the trial court relied upon the probation officer's file as a basis for revocation.

Order affirmed.

HOWARD, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.