## SWAN *v.* STATE
[No. 203, October Term, 1951.]

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Harold Buchman,* with whom were *I. Duke Avnet* and *Mitchell A. Dubow* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *William H. Maynard, Deputy State's Attorney,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant was one of several members of a political party who were convicted in 1948 in the Criminal Court of Baltimore by Judge Moser, sitting without a jury, of conspiracy to disturb the peace. After a motion for a new trial had been heard by the Supreme Bench, and overruled as to the count containing this charge, he was sentenced on March 22, 1949, to three months in the Maryland House of Correction, and to pay a fine of $10.00, but the sentence was suspended for two years, and he was released on probation in the custody of the Probation Department of the Supreme Bench. An appeal was taken to this court, an appeal bond given, and the appellant was released on bail. On November 17, 1949, the judgment was affirmed. *Winkler v. State,* 194 Md. 1, 69 A. 2d 674. Thereupon appellant filed with the Supreme Court of the United States a petition for a writ of *certiorari,* and the mandate of this court was stayed pending the consideration of this petition. On

March 27, 1950, the Supreme Court denied the petition, and its order on that petition, and the mandate from this court, were sent to the Criminal Court on March 30, 1950. On May 22, 1950, Judge Moser again sentenced the appellant, giving him the same sentence and suspension which had been given on March 22, 1949, and affirmed by this court. On January 22, 1952, more than two years after the imposition of the original sentence, but within two years from the denial of the writ of *certiorari* and the receipt of the mandate from this court, and within two years from the re-sentence, a warrant was issued for the appellant for a violation of probation. This was heard on January 30, 1952, the probation was stricken out, and he was sentenced to three months in the House of Correction and fined $10.00 and costs. This sentence was suspended pending appeal here, which was promptly taken, and which is this case now before us. Two questions are raised, first, had the probationary period expired prior to the time of its revocation by the lower court, and, second, did the court below abuse its discretion in revoking the order of probation?

The original sentence of appellant, which would ordinarily have begun on March 22, 1949, having been superseded, could not begin to operate until all of the proceedings which he invoked to set it aside had been tried and had failed. The sentence to the House of Correction, therefore, could have begun only after March 30, 1950, when the mandate of this court had been returned to the Criminal Court showing the denial of the writ of *certiorari* by the Supreme Court. There could be no suspension of the sentence until the sentence itself became operative, at which time the suspension also would take effect. It is not clear on what theory the trial court re-sentenced appellant, and again suspended the sentence, but it is not necessary for us to consider the validity of that action, because the revocation of the suspension was made within two years from the time the original sentence and suspension went into effect. Irrespective of the second sentence and suspension, the probationary

period on the original sentence had not expired at the time of the revocation by the trial court.

This court has held that a parole cannot be revoked without first giving the parolee a hearing, and that this is a requirement of due process of law. *Wright v. Herzog,* 182 Md. 316, 322-323, 34 A. 2d 460. *State ex rel. Murray v. Swenson,* 196 Md. 222, 76 A. 2d 150. *Hite v. State,* 198 Md. 602, 84 A. 2d 899. There is no question in this case that the appellant did have a hearing, and the requisites of due process were complied with in this respect. The question raised is whether the revocation was justified under the facts, and under a proper construction of the conditions of the suspension.

In ordinary circumstances, this court has no control whatever over a sentence imposed by a trial court, if the offense is one created by common law. If the offense is one created by statute, and the sentence is within the limits prescribed by that statute, then we likewise are without power to strike it down. The exception is one which has never occurred within the knowledge of this court, although it has been discussed in several cases. It is where the court has not acted from a sense of justice, but has plainly been actuated by some other and improper motive. *Mitchell v. State,* 82 Md. 527, 534, 34 A. 246. *Apple v. State,* 190 Md. 661, 59 A. 2d 509. *Von Den Bosch v. Swenson,* 194 Md. 715, 70 A. 2d 599. *Reid v. State,* 200 Md. 89, 88 A. 2d 478, 89 A. 2d 227. In the last mentioned case, all the previous cases involving these propositions are cited.

We do not have here, however, the question of a change of sentence, or of the imposition of a sentence actuated by any improper motive. What we have is a question whether the appellant violated the terms of his parole. That is largely a question of fact, and includes also the construction of the terms of the suspension which were made known to the appellant, and by which he was to be guided in his conduct. Such questions, while primarily within the discretion of the trial judge, are not wholly so, and are reviewable, if only

for the purpose of determining whether that discretion has been abused in any way, or whether an erroneous construction has been placed by the trial judge on the conditions of the parole. We find no difficulty in holding that in such a case, an appeal lies here.

The revocation was brought about by a petition of the chief probation officer of the Supreme Bench of Baltimore City, reciting that appellant had been released on condition that he should conduct himself in a law-abiding manner, and should avoid places or association with people which might easily lead to offenses against the law, that he had violated this condition by not conducting himself in a law-abiding manner, having been convicted on January 20, 1952, of the offense of illegally posting a public sign and having been fined $10.00 by the magistrate sitting in the Eastern Police Court of Baltimore City. The record shows that the appellant was attaching a poster on private property on January 19, 1952, at 1:45 in the morning. He was arrested and charged with the offense which is created by Section 24 of Article 39A of the Annotated Code. This article is the "Forestry" article of the Code. Section 24 provides that "Any person or corporation who in any manner, paints, puts or fixes any advertisement, sign, notice or other writing or printing other than notices posted in pursuance of law, on or to any stone, tree, fence, stump, pole, building or other structure which is in or upon the public highway or which is on the property of another, without first obtaining the written consent of such owner, * * * shall be guilty of a misdemeanor, and upon conviction shall be punishable by fine of not more than $10.00 * * *". The fine is payable to the State Board of Forestry. The statute was obviously intended to prevent the defacement of poles and buildings by the posting of signs thereon, and, while it is not a dead letter and should be enforced, it is a matter of common knowledge, and an obvious fact to which we are unable to close our eyes, that at the time of each election, almost every telegraph pole in the

State is plastered with signs advocating one or more candidates for office, this being true both on the highways throughout the counties, and in such of the cities as still permit such poles to exist. Such signs are also commonly seen at such times on houses and buildings of all kinds, especially those which are vacant, as was the one on which the poster was attached in the instant case. It may be doubted whether, in the case of a vacant building, or of a pole, any consent is ever obtained from the owner. However that may be, the appellant did violate a law, and the fact that the same law is regularly and universally violated without reprisal by others, does not excuse his offense, and could not be offered as a reason for not convicting him.

That, however, is not the question here. What we have before us is whether the commission of an offense such as this is sufficient to justify a court in holding that the appellant has not been conducting himself in a law-abiding manner. In the consideration of that question, which has to do with motive as well as fact, it is proper to consider that the statute violated is one which is regularly and generally neglected, and under which there are few, if any, prosecutions, that there is every probability that even if appellant knew of it, (of course he is *presumed* to know it), he also knew that it was generally violated with impunity, and that he intended to do no more than hundreds of other people were doing. The point is not that he was *convicted* of doing something forbidden by law. His parole could have been revoked without conviction for doing something which indicated that he was not a law-abiding citizen. It is not the conviction but the thing itself he was doing which must justify the revocation, if it is to be justified at all. There are many offenses which subject people to fines, and yet which do not indicate that those committing them are necessarily not law-abiding,—for instance, the violation of parking regulations in a city is an offense against the law, yet, if freedom from ever having committed such an offense is the test of a law-

abiding person, few of us can lay claim to the title. We cannot lay down a rule what offenses committed prevent a person from being law-abiding, and what do not. The circumstances existing in each case must be considered. But, to hold that merely because a man attaches a poster to an unoccupied building, he thereby ceases to be law-abiding and must be locked up for three months is, on its face, somewhat shocking.

Judge Moser did not strike out the probation wholly on this ground, apparently recognizing that, of itself, it was too minor a matter to justify such action. He admitted evidence to show the nature of the poster, and concluded from this evidence that appellant's conduct in the offense of which he was convicted before the magistrate was "in effect the very type of conduct for which he was sentenced before and for which he was given a suspended sentence." If we could find that statement to be justified by the evidence, we would be unable to hold that Judge Moser had exceeded his discretion, but we do not reach that conclusion.

The conspiracy to disturb the peace which caused the appellant to be convicted in the beginning was an effort on the part of a political party to bring to the attention of the public in a violent and unauthorized manner their objections to a rule or regulation or policy of the Park Board which prohibited the playing of interracial tennis. This court, in affirming the convictions, stated that it was clear that there was no question involved in the case of the right to play interracial tennis matches, nor was there any question before us of the invalidity of the policy of the Park Board. The question was whether "illegal means were taken by a group * * * to rectify a just grievance * * * an illegal attempt to have that grievance remedied." *Winkler v. State, supra,* 194 Md. 15, 69 A. 2d 679. The appellant was not convicted in that case for his opinions, or for his political beliefs, but for his method of testing a regulation or policy which we assumed for the purposes of that case to be illegal. He was convicted be-

cause of the means he took to impress his ideas upon the public, that is, by a conspiracy to disturb the public peace and attract public attention in that unlawful manner. The poster which the appellant lately affixed to the vacant dwelling contained no incitement to break the public peace. On the contrary, it was sponsored by the Civil Rights Congress as a protest against the Smith Act, 18 U. S. C. A. § 2385, the Federal act under which a number of Communists have been convicted, and which has recently been upheld by the Supreme Court of the United States. *Dennis v. United States*, 341 U. S. 494, 71 S. Ct. 857, 95 L. Ed. 1137. The protest, however, was obviously a peaceful protest, because the poster said: "Write, wire President Truman now." Whatever may have been, or may be, the political views of the appellant, he cannot be penalized for protesting, in a peaceful and orderly manner, any statute of which he disapproves. He has not been charged with any subversive activity under the Ober Law (Act of 1949, Chapter 86.) There not only is no resemblance to the original offense in the last charge against him, but, on the contrary, it is some indication that he has learned to present his views in a peaceable manner, which Article 40 of our Declaration of Rights states he ought to be permitted to do.

We do not adopt the view expressed in the appellant's brief, that it was evident that the lower court meant to stifle the appellant in activities of a controversial or political nature. We are unwilling to ascribe any such intent to a judicial officer of this State, but we do feel that, in some measure, the view of the trial judge of the seriousness of the crime was influenced by the nature of the poster, and the connection between the sentiments there expressed and the sentiments of the party to which the appellant belonged at the time of his first conviction. We think he failed to distinguish between the disorderly method adopted by the appellant in his first offense, and the peaceful manner in which he was endeavoring to express his sentiments at the time he affixed the poster on the vacant building. In

so connecting the two, the trial judge magnified a trivial action and gave it a significance not justified by the facts.

We conclude that there was an abuse of discretion by the trial court in revoking the appellant's parole, and that his order so doing must be reversed. In so holding, we do not intend to say that the violation of Section 24 of Article 39A is a trivial offense. That statute is valuable for the protection of property from unseemly and careless disfigurement, and it should be enforced. All we are holding in this particular case is that under the circumstances under which the statute was violated, we cannot find that the appellant had thereby ceased to be a law-abiding citizen. A parolee is not expected or required at once to achieve perfection. If his conduct is that of the ordinary well-behaved person, with no more lapses than all people have, with no serious offenses charged against him, and with no indication that he intends in the future to pursue the course which led to his original conviction, the courts and probation officers should not seek for unusual and irrelevant grounds upon which to deprive him of his freedom.

*Order reversed.*