## SCOTT *v.* STATE

[No. 244, September Term, 1964.]

268 

*Decided April 2, 1965.*

The cause was argued before HAMMOND, HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Russell J. White,* with whom was *Richard K. Jacobsen* on the brief, for appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Frank Cannizzaro, Jr., State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Acquitted by a jury of assault with intent to rape and assault, charged to have been committed while he was at liberty on probation after a conviction of robbery, the appellant Scott is aggrieved because the judge who sat in the robbery trial and granted probation, and who also presided at the subsequent jury trial on the assault charges, believed he had committed the assaults and revoked his probation.

On October 30, 1963, Scott pleaded guilty to robbery before Judge Harris. The admitted facts were that he attacked a woman late at night in a parking lot, striking her in the face with his fist, and seized her handbag. He was given three years. On December 23, 1963, Judge Harris, after receiving a probation report that Scott had a sound family and employment background and no prior criminal record, "reluctantly acceded to the recommendation of the Probation Department," suspended the balance of the sentence and placed him on probation for three years, subject to the conditions of probation customarily

imposed in Baltimore (to which Scott agreed in writing) including the condition that the released person "shall conduct himself in a law-abiding manner."

On January 19, 1964, Scott was charged with assault with intent to rape a seventy-one year old woman and common assault upon her. Passersby came to the assistance of the victim, a Mrs. Grimes, and the assailant, becoming frightened, ran away, leaving his hat at the scene. Mrs. Grimes gave the hat to the police and after Scott had been arrested near the scene of the assault and taken to the police station, the arresting officer took the hat to Scott's home and, according to his official report, Scott's mother immediately identified it as her son's hat. Several days before the trial, which was held on April 14 and 15, 1964, Scott's lawyer advised the State's Attorney that the mother had recanted and that if called as a State's witness she would testify that she had never seen or identified the hat. Nevertheless, the State called the mother as its witness and attempted to claim surprise and impeach her testimony. Judge Harris ruled that this could not be done because the State had been put on notice before the trial of the mother's probable testimony. The State then proffered the testimony of the arresting police officer that he had shown the hat to Scott's mother and that she had identified it as her son's. Judge Harris refused to receive the proffered testimony on the ground that it would be hearsay. The jury acquitted Scott.

Thereafter, Judge Harris advised Scott's court-appointed lawyer, Mr. Russell White (who, upon designation of Judge Harris, has well represented Scott in this appeal), that he felt he must revoke Scott's probation because he was convinced by the facts, as to the identification of the hat, which the State was unable to get before the jury, that Scott had committed the assaults. The lawyer apparently then advised Scott of Judge Harris' views and intended action and, later in the day on which the jury acquitted Scott, he was brought before Judge Harris and the following colloquy took place:

> "THE COURT: Mr. White, I have already talked to you concerning the action I am going to take in this case. Is there anything that you care to say before I give my reasons for——

"MR. WHITE: Well, I don't know if I really have any standing, your Honor, having completed my services as court appointed attorney I wonder really whether I have any proper standing here at all.

"THE COURT: Well, you have shown a great interest in your assignment as counsel for Scott, and said that if I took any further action you would want to be present. That was the reason why I asked if you cared to say anything.

"MR. WHITE: Well, only what I said at the bench, your Honor, previously" (apparently a reference to the same contention and argument that is now made, that on the evidence before Judge Harris there could not be a revocation of probation for conduct amounting to a crime of which the jury had acquitted the probationer).

Judge Harris then said:

"I will not comment on the verdict of the jury. But, I do know that there was certain proffered evidence, and important evidence, which the jury did not hear, and which it could not hear under the rules of evidence. I can not help but believe, in my own mind, that regardless of the technical rules of evidence which apparently resulted in the verdict of not guilty, plus the skill of your counsel, that you actually did commit this one act, the assault with which you were charged in two counts, I can not fulfill my obligation to the public by allowing you to go free, having this knowledge in my mind that the jury could not hear,"

and sent Scott back to the Maryland Institution for Men to serve the two years and eight months remaining of the three-year sentence which had been imposed on October 30, 1963.

Scott wrote Judge Harris, asking why his probation had been revoked after the jury had acquitted him and, in reply, received an answer which set out in detail what has been set out above, and said:

"I was faced with the situation of having a jury find you legally not guilty of the two assault charges when, based upon information known to me but which could not be made known to the jury, it seemed certain to me that you were Mrs. Grimes' assailant. When I considered the fact that you had committed and had pleaded guilty to a fairly similar violent offense only several months prior to the one which occurred in January of 1964, and the fact that I had information which clearly indicated that you were Mrs. Grimes' assailant, I felt that I could not continue your probation. In my opinion, your actions (as known to me) violated the 'good conduct' condition of your probation; and in fact, I believe you to be a threat to the safety of the public.

"I hope that this letter fully answers your letter to me of April 15, asking the reasons why I revoked your probation."

He concluded by advising Scott that he would treat his letter as an order for appeal, and that he had appointed Mr. White as his lawyer.

On the stage of this Court, before the background we have portrayed, Scott relies on these propositions:

1. It was an illegal—perhaps unconstitutional—abuse of discretion for Judge Harris to revoke his probation, on hearsay evidence, which had properly been excluded from the jury in the trial on the assault charges, but which had persuaded the judge that he was guilty of conduct of which he had been acquitted;

2. The manner in which the probation was revoked violated the requirements of procedural due process.

We had occasion recently in *Edwardsen v. State*, 220 Md. 82, to review substantive and procedural facets and requirements of revocation of probation. Judge Henderson, speaking for the Court, said that a proceeding leading to a revocation of suspension of sentence and probation is informal in character and not subject to the limitations and restrictions upon a trial on a charge of crime, which requires proof beyond a reasonable doubt

in order to convict, citing *Jett v. Superintendent,* 209 Md. 633, 640; *Manning v. United States,* 161 F. 2d 827 (5th Cir.), *cert. den.* 332 U. S. 792, 92 L. Ed. 374; and Mutter, *Probation in the Criminal Court of Baltimore City,* 17 Md. L. Rev. 309, 316.

*Manning,* which was relied on in *Edwardsen,* summed up the law (similar later cases, such as *Yates v. United States,* 308 F. 2d 737 (10th Cir.), and *Broadus v. United States,* 317 F. 2d 212 (5th Cir.) have agreed) by saying, in the language of *Burns v. United States,* 287 U. S. 216, 77 L. Ed. 266, that (at p. 829 of 161 F. 2d) :

> "* * * a proceeding for revocation of probation is not one of formal procedure 'either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion.' "

As to the nature of the proof upon which the Court may act, *Manning* said (p. 829 of 161 F. 2d) :

> "But proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and the facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation."

Judge Henderson agreed in *Edwardsen* that the critical inquiry in testing the correctness of a revocation of probation is whether there was an abuse of discretion below, saying (at p. 88 of 220 Md.) :

> "*Swan v. State,* 200 Md. 420, 425, was a case involving the striking out of a suspended sentence for violation of the conditions of probation, after hearing. It was held that an appeal would lie, at least to determine

whether the trial court abused its discretion or placed an erroneous construction on the conditions of the probation. Abuse of discretion may be found if the trial court acts arbitrarily or capriciously. *Burns v. United States,* 287 U. S. 216, 222."

See also *Coleman v. State,* 231 Md. 220, 222.

In considering the requirement of a hearing, we said in *Edwardsen* (p. 88 of 220 Md.) : "In the absence of statute, many courts have held it is not even necessary to have a hearing." The foundation for this conclusion may well have been *Escoe v. Zerbst,* 295 U. S. 490, 79 L. Ed. 1566. There, after holding that, under the applicable federal statute which specified that a probationer accused of violation of the conditions of his probation should "forthwith be taken before the court," a revocation of probation without a judicial hearing was invalid and ineffective, Justice Cardozo, for the Court, said (p. 492-493 of 295 U. S.) :

> "In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. * * * But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in opposition to the will of Congress, has been confided to the courts." [1]

1. Judge Henderson recognized in the Edwardsen case that in Murray v. Swenson, 196 Md. 222, 229, 231, the Court of Appeals had held, in a case of revocation of a conditional pardon by the Governor, "which may be distinguishable because the legal effect of a pardon is different," that a hearing is required as a matter of due process. Dicta in Hite v. State, 198 Md. 602, 605, and Swan v. State, 200 Md. 420, reaffirmed the statement in Murray v. Swenson. Wright v. Herzog, 182 Md. 316, had held that no right to a hearing to a parolee existed under statute or the constitution unless demanded by due process of law and in the absence of any allegation or showing of arbitrary action by the Governor, no

On the matter of the nature and extent of the hearing, Justice Cardozo then said (p. 493 of 295 U. S.) :

"Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. *Burns v. United States, supra* [287 U. S. 222, 223, 77 L. Ed. 269, 270, 53 S. Ct. 154]. It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper. [Ibid]. That much is necessary, or so the Congress must have thought, to protect the individual against malice or oppression."

This Court went on, in *Edwardsen,* to consider the provisions of Sec. 279 of the Charter and Public Local Laws of Baltimore City, which authorizes the court to end probation upon written charges, warrant or notice and after a hearing and a finding of violation of the terms of probation and, adopting the

---

constitutional violation existed even if the revocation of parole was done without a hearing. Murray v. Swenson did not purport to overrule Wright v. Herzog. Yet as Mutter points out in his article, at p. 319 of 17 Md. L. Rev., the Annotation in 29 A.L.R. 2d 1074 states at p. 1087:

"Notwithstanding the court's explanation, [in Murray v. Swenson] these Maryland cases are conflicting. The conflict arises from the court's failure to distinguish between 'procedural due process'—the right to a hearing as a procedural step,—and 'substantive due process'—which protects against the arbitrary exercise of a valid power. The opposite results reached in the two cases were justified by the facts * * *."

At page 1124 the annotation repeats that Herzog and Swenson are, "* * * despite the court's attempt to explain the earlier decision, in direct conflict in principle, as a result of the court's failure in the Swenson case to distinguish between 'procedural' and 'substantive' due process."

philosophy of *Escoe v. Zerbst,* said (p. 89 of 220 Md.) : "The alleged violator is entitled to a reasonable opportunity to refute the charges laid, not to a formal trial." *Edwardsen* also held that an accused probationer is entitled to be represented by counsel employed by him but that the State need not furnish counsel unless due process would be affronted, in that, for lack of counsel the probationer would be at such a disadvantage that an ingredient of unfairness actively operated in the process that led to the revocation of his probation.

We think that Scott has no just cause for complaint that his conditional freedom was ended by Judge Harris. Probation is a matter of grace, which aside from being an act of clemency extended to one who has committed a crime, is in substance and effect a bargain made by the people, through legislation and the courts, with the malefactor that he may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society. It offers the young or unhardened offender an opportunity to rehabilitate himself without confinement under the tutelage of a probation officer and there may be attached to the opportunity the condition that it may be ended, if the court is reasonably persuaded, by knowledge of facts, even if obtained more informally than the rules of evidence would permit it to be obtained in a trial, that it should be. Probation is a personal privilege of which the grantee may not be deprived arbitrarily or capriciously, but if one charged with breach of probation is given notice of the charges of violation of the conditions and the opportunity to answer or explain the facts which have come to the knowledge of the judge, even though not in the manner required by the rules of evidence, and the facts justify revocation, the act of revocation is not arbitrary or capricious.

In the determination of a proper sentence a judge may utilize information obtained outside the courtroom, information furnished by those not subject to cross-examination and sometimes hearsay (provided that information not received from or in the presence of the defendant should be called to his attention so that he has the opportunity to refute, discredit or explain it—unless under Md. Rule 761 d the court directs otherwise as to a pre-sentence report). See *Costello v. State,* 237

Md. 464, 206 A. 2d 812; *Driver v. State,* 201 Md. 25; *Williams v. New York,* 337 U. S. 241, 93 L. Ed. 1337; and the annotation *Imposing Sentence and Procedural Due Process,* 93 L. Ed. 1345, following the *Williams* case. There is clearly a similarity between the process of determining a proper sentence originally and the process of determining whether to revoke probation and reinstate or impose a sentence, and the judge in the latter instance may, with similar safeguards, utilize the ways of acquiring knowledge bearing on the problem that the judge utilizes in determining a proper sentence originally.

The facts presented to or coming to the knowledge of the judge, as to the breach of the conditions of probation, need not establish guilt beyond a reasonable doubt as in criminal offenses; all that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty.

These considerations underlie the decisions that hold or indicate that acquittal of a probationer of a charge of criminal conduct which was a violation of probation does not preclude revocation of probation, if the judge passing on the question is with reason satisfied that the probationer actually did that charged in the indictment on which he was acquitted. The decision of the Supreme Court of Appeals of Virginia in *Marshall v. Commonwealth,* 116 S. E. 2d 270 (1960), flatly so holds on facts quite like those in the case before us. Also see *State v. Greer* (N. C.), 92 S. E. 147; *People v. Kuduk* (App. Ct. Ill.), 51 N. E. 2d 997, appeal dismissed, 57 N. E. 2d 755; *Bernal-Zazueta v. United States,* 225 F. 2d 64 (9th Cir.) and Note, *Legal Aspects of Probation Revocation,* 59 Colum. L. R. 311, 332.

In *Gonder v. Board of Liquor License Commissioners of Baltimore City,* Daily Record, Aug. 28, 1943, a liquor licensee was acquitted in the criminal court of selling liquor to minors. The Board suspended his license upon being satisfied that he had made the sales. Judge Tucker held that the acquittal was not res judicata and the Board could make the suspension. For a similar ruling, see 29 Op. A. G. 50. It has been held specifically

that in passing on revocation of probation the latitude of inquiry is such that it is competent and proper for the trial court to consider evidence which would not have been admissible in a trial of the accused for a crime on the issue of violation of the conditions of probation. See *Brill v. State* (Fla.), 32 So. 2d 607; and *Soliz v. State* (Ct. Cr. App. Tex.), 350 S. W. 2d 566, where the only proof of violation of probation—burglary not yet criminally proven—was the testimony of an accomplice which would be insufficient to convict criminally. It was held this evidence was sufficient in the probation hearing. See also *Manning v. United States, Yates v. United States,* and *Broadus v. United States,* all *supra.*

Analogies exist between the opportunity given a probationer to earn his living as an unconfined member of society as long as he does not injure or threaten the legitimate interests of that society and the right given a lawyer or a doctor to practice his profession. It has been generally held that the acquittal of a member of the bar on a charge of crime is not res judicata in a subsequent disciplinary proceeding based on substantially the same charge or conduct. 7 Am. Jur. 2d *Attorneys at Law* Sec. 57; *In re Pennica* (N. J.), 177 A. 2d 721; *In re Browning* (Ill.), 179 N. E. 2d 14. For similar holding as to physicians see 41 Am. Jur. *Physicians and Surgeons* Sec. 58, pp. 182-183. The annotation at 123 A.L.R. 779 entitled *Effect of Acquittal or Dismissal in Criminal Prosecution to Bar Revocation of License of Physician or Disbarment of Attorney* cites many other cases on point as to both physicians and lawyers.

In our view Judge Harris was on sound ground in revoking Scott's probation. At the argument Scott's lawyer told us in so many words that if we so held, Scott did not urge a remand based on procedural defects, insufficiencies or inadequacies of the hearing. We think that there is no need for such a remand. While the manner of giving notice to Scott and the timing and conduct of the hearing could have been more in accord with the statutory directions of the Charter provisions as to probation and the revocation thereof, and more formal and precise, we find that Scott was given full notice of the reasons which led Judge Harris to contemplate revocation of probation and of the facts which underlay those reasons, that he had the advice of coun-

sel and a reasonable opportunity, under the circumstances, to refute or explain the charges and that his lawyer did present to Judge Harris the argument that the court had no right, in view of the acquittal, to revoke probation and that it would be an abuse of discretion on the evidence before him to do so. *Cf. Jett v. Superintendent, supra.* This was enough to comply with the fundamental requirements of procedural due process, which is to say, in the words of Justice Cardozo in *Escoe v. Zerbst* (at p. 493 of 295 U. S.), that Scott had a chance to say his say before the word of his pursuers was received to his undoing and that there was "* * * an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper."

*Order affirmed.*