CHARLES WILLIAM COLES *v.* STATE OF MARYLAND

[No. 135, September Term, 1980.]

*Decided May 25, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

Submitted on brief by *Thomas Patrick O'Reilly* and *O'Reilly & Serio* for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Ray E. Stokes, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant, Charles William Coles, stands convicted of seven counts of welfare fraud.[1] He brings this appeal not from the initial conviction and sentence but from the subsequent revocation of his probation and reinstatement of the balance of seven concurrent ten year prison terms previously suspended at the time probation was granted.

On September 1, 1978, a jury in the Circuit Court for Montgomery County convicted appellant of seven counts of false or fraudulent statements made in applications for public assistance benefits in violation of Md. Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 88A, § 62 (a). The pre-sentence investigation report indicated that the accused defrauded the Montgomery County Department of Social Services of $30,099.82. That document also noted that "the majority of the public assistance checks were deposited towards payments of the mortgage on the [appellant's] home." At the time of sentencing, Coles offered to pay back his illgotten funds at a rate of $200.00 per month and his

---

1. Technically, Coles was found guilty of perjury. Md. Code (1957, 1969 Repl. Vol., 1978 Cum. Supp.), Art. 88A, § 62 provided that "any person who in making and signing . . . an application [for public assistance] makes a false or fraudulent statement with intent to obtain any such . . . assistance is guilty of perjury. . . ." Since there has been no change relevant here in the most recent codification, throughout this opinion we will refer to the 1979 Replacement Volume and its 1980 Cumulative Supplement.

counsel argued against the imposition of incarceration, urging instead the granting of probation conditioned upon restitution being made. Announcing that "this welfare fraud business has got to stop," the presiding judge sentenced Coles to serve ten years on each count and directed that the sentences be served concurrently. Addressing Coles, Judge Mathias noted:

> You have a house which is a nice house. Only eleven years old. It has four bedrooms, living room, dining room, kitchen, basement, recreation room. Two car garage. A brick and frame house. And it's on a twelve thousand square foot parcel of land in a nice area of Montgomery County. I'm told that the fair market — today's fair market value of that house is $58,000.00. Ten years ago you paid $42,500.00. I happen to own a house and I happen to know that property values in the last ten years have skyrocketed and I firmly believe that the fair market value of that house is not $58,000.00 on today's market but is closer to eighty or ninety thousand dollars on today's market. You have a mortgage against it in the amount of roughly $24,000.00. If the property is worth $80,000.00 then your equity in the property is $56,000.00. That property, I am fairly certain, could be refinanced and you could probably borrow $56,000.00 against it. When you paid off your present loan of $24,000.00 you would still have enough money left to pay off this $30,000.00 that you owe to the Department of Social Services of Montgomery County. In other words, I think you can satisfy this indebtedness by refinancing your property.

Accordingly, the serving of all but 179 days of appellant's sentence was suspended. Following this abbreviated incarceration, the defendant was placed on probation for four and one-half years on the condition that he pay $200.00 per month for the one year ending December 1, 1979, when the entire remaining amount was to be restored to the

county department of social services. "What I'm doing," declared the court, "is giving you a year, a little more than a year, to refinance your house and raise the money to pay this off." Appellant acquiesced in this determination and took no appeal from the judgment.

Coles met his $200.00 monthly obligations, but when he failed to make the $28,499.82 final restitution payment, the State filed a petition seeking revocation of his probation. At the hearing held on July 9, 1980, before Judge Mathias, appellant indicated that he was financially strapped — stretching his sole income, a monthly disability check of $550.00, to cover mortgage payments of $338.00, a food bill of "six hundred something dollars" to support his wife and five children, gasoline bills of $100.00 "going back and forth to church," insurance of $50.00, a loan payment of $400.00, electrical bills of "$75.00 and up" as well as additional minor expenses. At this hearing, Coles also revealed that, although his wife was unemployed, she had purchased a Fleetwood Cadillac for cash, but that he didn't know where she got the money because he does not "go into her business." The nub of the matter, however, centered on Coles' failure to make full restitution through refinancing his house. The probationer asserted that he was unable to make the final ordered payment because the home was owned by the couple as tenants by the entireties and the spouse was unwilling to participate in the refinancing directive;[2] he did, however, volunteer to continue to make restitution at the diminished rate of $50.00 per month. Judge Mathias, plainly disbelieving the convict, declined his propoundment, explaining:

> I realize of course that I could not keep [appellant] on probation long enough to pay the restitution in full at the rate of $200.00 a month, because under the law I can only place him on probation for a maximum of five years.

---

2. We note that in some circumstances, one who accepts the fruits of fraud knowing at that time the means by which they were obtained may become liable to the victim. See 37 C.J.S. Fraud § 61 (1943); cf. Williams v. Johnson, 261 Md. 463, 276 A.2d 95 (1971).

So, realizing that, and realizing that he was willing at that time to make restitution, and realizing that he had taken stolen money and used it to buy his home, I thought it fair and just that he put a mortgage or refinance his home in order to pay back this money he had stolen from the public.

\* \* \*

I went and even had the Department of Assessments give me an idea of what the house was worth, and at that time in 1978, two years ago, according to the report I got, the house was determined to have a then value of $80,000. In two years I am sure that its value has increased considerably. In looking at the picture, being familiar with the location of this property, my guess is that it is worth close to $125,000 on today's skyrocketing market. He testified at the trial that the balance owed on the mortgage was $23,456.29. That was in 1978, so it has probably been reduced pretty close to $20,000. So, he's got pretty close I would say, to $100,000 in that house. Largely by reason of the fact that he stole money from the public and put it in the house, I see nothing unjust about requiring him to refinance that house to pay the money back. He says his wife won't agree to it, and her name is on the deed. Well, I think that he has enough control over his wife to get her to do that, and I think she probably has enough consideration for him to do it.

The court also scoffed at appellant's representations as to his income:

The evidence shows that he is paying $354 a month on a mortgage, and that he is supporting a wife and five children, and counsel says seven children, but I only count five. Two of them are emancipated. Only three of whom are minors, but he says that he is putting two, the two older

children through school, and in addition to buying food, supporting the family, and paying a $354 a month mortgage, he now makes $550 and stretches it to do all of that. I don't see how, and I don't believe it. I think he has more income than that. He certainly had more income than that in 1978 when he appeared before me.

\* \* \*

I think his representations amount to impoverishment. If it is true, he is simply impoverishing himself so he can't pay back this money. He was supposed to have refinanced his house, and he was supposed to have made this restitution by December 1, 1979, over six months ago.

So the judge concluded:

[H]e has flouted the law and the requirements of the probation contract which he signed, and I don't believe that it is because he can't and is unable to pay. I think he is just trying to con the Court, therefore, the Court strikes the suspension of the sentence, revokes his probation, and orders that he serve the balance of his sentence in the amount of eight years and 181 days, and that is to be served under the jurisdiction of the Division of Corrections of Maryland.

The spectre of imprisonment occasioned by the order prompted this appeal. We granted certiorari before the Court of Special Appeals passed on the issues here presented.

On appeal, the challenge to the propriety of the revocation of probation is two-fold. Appellant primarily urges that the trial judge erred in the first instance when he ordered restitution because the court either had no authority to do so, or, by failing to adequately inquire into appellant's finances at the time of sentencing, abused its discretion to

shape each punitive order to fit both the criminal and the crime. Alternatively, the argument goes, since "the record clearly shows that the appellant made a good faith effort to obtain the funds to repay the money owed," there was no violation that could authorize the revocation of probation and his consequential imprisonment. We see no merit to these claims.

In addressing appellant's attack on the propriety of the original sentencing order, we note that he took no appeal from the final judgment embodying that sentence. In fact, at sentencing, both appellant and his counsel urged the court to order restitution in lieu of incarceration, and it was not until the probation revocation hearing that appellant questioned the validity of his original sentence. The correctness of conditions of probation must be determined on an appeal from the final judgment of conviction and sentence, *e.g., Bird v. State,* 231 Md. 432, 437-38, 190 A.2d 804, 807 (1963), and not on the subsequent revocation of probation, "because to do so, would, in effect, permit a circumvention of [Md. Rule 1012] which requires an appeal to be taken within thirty days" following the entry of final judgment. *Coleman v. State,* 231 Md. 220, 223, 189 A.2d 616, 618 (1963); see *Stone v. State,* 43 Md. App. 329, 405 A.2d 345 (1979). To this, however, there is at least one exception. A trial court clearly has the authority and responsibility to correct an illegal sentence at any time, Md. Rule 774 a; *Carter v. Warden,* 210 Md. 657, 124 A.2d 574 (1956), *cert. denied,* 352 U.S. 900 (1956), and the refusal to do so, no matter when the correction request is made, is appealable. *State ex rel. Sonner v. Shearin,* 272 Md. 502, 520, 325 A.2d 573, 583 (1974); *Roberts v. Warden,* 206 Md. 246, 255, 111 A.2d 597, 601 (1955).

Seizing on this exception in an apparent attempt to justify his appeal at this late date, appellant urges in this Court that the sentencing judge was not statutorily authorized to order restitution in this case and thus, the original sentence encompassing this requirement was illegal. In making this argument, Coles relies on Md. Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.), Article 27, section 640, which recognizes

in some situations the discretionary authority of the court to insure that a victim is made whole, or partially so, by requiring a defendant, guilty of conduct which constitutes "a crime as defined in Article 27 . . . ," to make restitution.[3] Since the act of falsifying applications for public assistance for which he was convicted is made a crime by Article 88A, section 62 (a), and is not "defined" in any provision of Article 27, appellant asserts that the court was without authority to order restitution; thus, Coles concludes the repayment portion of his sentence is illegal.[4] An examination confined to these mentioned statutes demonstrates that this argument would not be without substantial facial appeal if the sole authority of the court to order restitution derived from section 640. As we see it, however, broad power to provide for suspension of sentence and impose conditions of probation is additionally conferred upon the court by section 641A, which provides in pertinent part:

> Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or

---

**3.** Subsection (b) of this section provides in relevant part:

Upon conviction for a crime where property of another has been stolen, converted, unlawfully obtained, or its value substantially decreased as a direct result of the crime . . . the court may order the defendant to make restitution in addition to any other penalty provided for the commission of the crime.

Subsection a (2) defines "crime" as used in this provision to mean an act committed by any person in the State of Maryland which would consitute a crime as defined in Article 27 of the Annotated Code of Maryland or at common law. . . .

These sections are a part of what was enacted by the General Assembly as chapter 581 of the 1977 Laws in order, as is made plain by its title, to ameliorate some of the loss suffered by victims of designated crimes.

**4.** Article 88A, § 62 (a) for which appellant stands convicted provides in pertinent part:

Any person who in making and signing [an application for public assistance] makes a false or fraudulent statement with intent to obtain [such assistance] is guilty of perjury and upon conviction therefor is subject to the penalties provided by law for perjury. [Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 88A, § 62 (a).]

In addition to § 62 (a), perjury is made a crime by Code (1957, 1976 Repl. Vol.), Art. 27, § 435. However, since perjury as defined in § 435 does not include the making of a false statement without an oath or affirmation, appellant advances at least a plausible contention that the conduct for which he was convicted is not proscribed by Article 27; rather, it constitutes an Article 88A crime for which the penalty is found by reference in Article 27.

execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper. [Code (1957, 1976 Repl. Vol.), Art. 27, § 641A.]

We are satisfied that this provision generally authorizes the type of action taken by Judge Mathias in the present case, and that pursuant to the discretion vested in the court by this enactment, *see Williamson v. State*, 284 Md. 212, 395 A.2d 496 (1979), the terms and conditions upon which probation is granted may include an order to pay restitution, whether entered for the purpose of furthering the rehabilitation of the defendant or otherwise. *Accord, Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979); *State v. Wilson*, 274 S.C. 352, 264 S.E.2d 414 (1980).

This brings us to appellant's alternate contention concerning the rectitude of the trial judge's initial sentencing order, namely, that the court failed to examine adequately Coles' financial status prior to providing for the restitution payments required of him. Since this objection focuses upon what is generally considered to be one of the primary purposes served by an order requiring a defendant to repay his victim, we briefly outline the economic and penological aims sought to be accomplished by it. A court which orders restitution does a certain solomonic justice for the aggrieved victim who is entitled to requital of that unlawfully taken or reparation for injury criminally inflicted; thus, restitution as a probationary tool has an understandable appeal. Its significance extends beyond untinseled justice, however, for it should be viewed more expansively as an aid in rehabilitating the defendant. As one court stated:

> [Restitution] offers the individual something within reason that he can do here and now, within the limits of his ability to demonstrate to *himself* that he is changing. A fine is punitive. A jail sentence is retributive. But restitution makes sense. It is every man's obligation to meet responsibilities of this sort in civil life. [*State v.*

> *Harris,* 70 N.J. 586, 362 A.2d 32, 35 (quoting D.
> Dressler, *Practice and Theory of Probation and
> Parole* 176-77 (1959) (emphasis in original).]

It has been said that "a court's concern that the victim be
fully compensated should not overshadow its primary duty
to promote the rehabilitation of the defendant."
*Commonwealth v. Fuqua,* 267 Pa. Super. 504, 407 A.2d 24, 26
(1979); *see* Best & Birzon, *Conditions of Probation: An
Analysis,* 51 Geo. L.J. 809, 827 (1963). Should the court
choose to impose restitution, this fundamental objective of
promoting rehabilitation comes to the fore and the court in
ordering such a condition ordinarily should not exceed the
defendant's ability to comply. This is so because if the
amount fixed exceeds the defendant's resources, the
rehabilitative purpose of the sentence is frustrated,
especially where restitution is set as a condition of
probation, "for in such a case the defendant is told that he
will not be imprisoned only if he somehow satisfies a
condition he cannot hope to satisfy." *Commonwealth v.
Fuqua, supra,* 407 A.2d at 26. See *State v. Garner,* 115 Ariz.
579, 566 P.2d 1055, 1057 (App. 1977); *People v. Kay,* 36 Cal.
App. 3d 759, 111 Cal. Reptr. 894, 896 (1973); *State v. Harris,
supra; Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403, 407
(1978). Consequently, most courts which have considered
the issue have determined that it is improper for a trial court
to order restitution without basing that judgment on a
reasoned inquiry into the defendant's ability to pay, *e.g.,
State v. Garner, supra; People v. Kay, supra; People v.
Lofton,* 78 Misc. 2d 202, 356 N.Y.S.2d 791, 793-94 (1974)
(interpreting statute); *State v. Ledder,* 31 Or. App. 487, 570
P.2d 994, 996 (1977); *Commonwealth v. Fuqua, supra; State
v. Wilson,* 274 S.C. 352, 264 S.E.2d 414, 416 (1980); *State v.
Benoit,* 131 Vt. 631, 313 A.2d 387, 389 (1973) (interpreting
statute); *Huggett v. State, supra,* 266 N.W.2d at 407-08;
*contra, People v. Tidwell,* 33 Ill. App. 3d 232, 338 N.E.2d
113, 118 (1975) (interpreting statute). For a chronicling of
these and other cases on this point, *see generally* Annot., 73
A.L.R.3d 1240 (1976).

This Court, however, is not called upon here to decide whether or to what extent the trial judge should have examined the finances of Coles prior to imposing the restitutionary sentence, for it is clear that the failure to make such an inquiry, even if mandatory, does not render the sentence illegal within the meaning of Rule 774 a. Since we have already determined that the trial court possessed statutory authority to require appellant to make restitution, the sentence ordered is one of the array of permissible measures from which the judge could draw in shaping a particular declaration of penalty. *Reynolds v. Warden,* 229 Md. 623, 182 A.2d 875 (1962). We have recently, in *Logan v. State,* 289 Md. 460, 480, 425 A.2d 632, 642 (1981), reiterated both the breadth of the power of the sentencing judge in this regard and the nature of the limitations placed upon him, where we said that the judge in the exercise of the discretion vested in him "may impose any sentence, which is not cruel and unusual punishment proscribed by Article 16 of the Maryland Declaration of Rights, and which is within the statutorily imposed limitations (if any there be), determined to be deserved for or necessitated by the proven criminal conduct in question." While it may be that the failure of the sentencing court to make an adequate inquiry into the finances of the accused prior to sentencing theoretically could constitute error, *see State v. Garner, supra; Shenah v. Henderson,* 106 Ariz. 399, 476 P.2d 854, 856 (1970) (en banc); *People v. Tidwell, supra; People v. Lemon,* 80 Mich. App. 737, 265 N.W.2d 31, 34 (1978); *State v. Ledder, supra,* appellant, by not appealing from his conviction and sentence, has foregone the opportunity to present now these contentions. Rule 1012; *Coleman v. State, supra.*

Having answered appellant's complaints concerning the imposition of his sentence, we are left to consider Coles' assertion that the trial court committed reversible error in revoking his probation. In this connection, it is often stated that the question on appeal "is simply whether there has been an abuse of discretion. . . ." *Burns v. United States,* 287 U.S. 216, 222, 53 S. Ct. 154, 77 L. Ed. 266 (1932); see *Scott v. State,* 238 Md. 265, 272, 208 A.2d 575, 578-79 (1965). This

discretion, however, is activated only after the State shows to the satisfaction of the court that a condition of probation has been violated. *Humphrey v. State,* 290 Md. 164, 175, 428 A.2d 440 (1981). And "even then, ordinarily probation may not be revoked if the probationer proves that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own." *Id.* In *Swan v. State,* 200 Md. 420, 425-26, 90 A.2d 690, 692-93 (1952), we recognized that whether a condition of probation has been violated involves "largely a question of fact." Hence, before any discretionary action is occasioned, the judge assumes the role of factfinder to determine: in the first instance, whether the State has met its obligation of showing that there has been a failure of compliance with a condition of probation, and if so, secondly, whether the probationer has carried his burden of establishing that the violation "resulted from factors beyond his control and through no fault of his own." *Humphrey v. State, supra.* This is not to say that the factual determination incident to a revocation of probation is akin to a criminal trial, for

> [t]he facts presented to or coming to the knowledge of the judge, as to the breach of the conditions of probation, need not establish guilt beyond a reasonable doubt as in criminal offenses; all that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. [*Scott v. State, supra,* 238 Md. at 276, 208 A.2d at 581; *Edwardsen v. State,* 220 Md. 82, 88-89, 151 A.2d 132, 135-36 (1959).]

As in review of all judicial factfinding, this Court consistently defers to the finder, and we will not substitute our judgment for that of the trial judge unless his determinations are clearly erroneous. Md. Rule 886; *Mosley v. State,* 289 Md. 571, 580, 425 A.2d 1039, 1044 (1981).

Here, Coles admitted that he had not complied with the restitution order. The appellant asserts, however, that "the

record clearly shows that [he] made a good faith effort to obtain the funds to repay the money owed, but that he was unable to raise the substantial lump sum payment . . . without his wife's consent and that she was unwilling to agree. . . ." Appellant, thus, asserts that he has met his burden of establishing that the admitted violation of the condition of his probation agreement was caused by no fault of his own. As is evident from even a cursory perusal of the record, however, the trial judge simply did not believe the probationer's protestations, and from our review of the totality of the circumstances presented by this record, we cannot say that Judge Mathias' perception of the credibility of this witness is clearly erroneous. With the only testimony presented by the appellant in support of his good faith defense thus discounted, he clearly has not met the burden placed upon him to demonstrate lack of fault on his part. With this determination, the trial court, by an act at that point committed to its sound discretion, terminated the defendant's conditional release and directed that he be returned to confinement. As we conclude that the sentencing judge was not clearly erroneous in his factual finding of a willful violation of the condition, nor did he abuse his discretion in ordering incarceration, we affirm the trial court's judgment.

> *Judgment of the Circuit Court for Montgomery County revoking probation of Charles William Coles affirmed.*
> *Costs to be paid by appellant.*