# MICHAEL OLLIE HÚDGINS v. STATE OF MARYLAND

[No. 70, September Term, 1981.]

*Decided January 5, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Victoria S. Keating, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. COLE, J., dissents and filed a dissenting opinion at page 350 *infra.*

We granted certiorari in this criminal cause to examine whether the Court of Special Appeals erred in holding that petitioner Michael Ollie Hudgins was not entitled to relief from revocation of the probation which had been earlier granted him at the time he was sentenced in the Circuit Court for Baltimore County. We disagree with the conclusion reached by the intermediate court in its unreported opinion, and consequently, will reverse its judgment and remand the case for further proceedings in the trial court.

The record reveals that Hudgins, in accord with a bargain struck with the State, entered a plea of guilty to daytime housebreaking on August 24, 1979, and received a sentence of five years imprisonment. Pursuant to the bargain, the court suspended sentence and placed the prisoner on supervised conditional probation for a three year period. The agreed statement of facts, entered into by the parties in harmony with Maryland Rule 828g, graphically portrays the background information relevant to this appeal:

> [Upon acceptance of the guilty plea, the court placed the petitioner] on probation with the *special condition that he cooperate with the Maryland State Police in tracking down criminals.* [(Emphasis supplied).] No appeal was taken. On

October 3, 1980, a hearing before the same judge who had imposed sentence was held on the State's petition to revoke appellant's probation, wherein the following facts were adduced:

According to appellant's probation agent, Jeffrey Israel, the special condition "was kept, I guess, quiet." It was not written down anywhere and Israel himself knew nothing about it. As far as Israel was concerned, appellant had complied with all the rules: he had paid his costs in full, he had reported as instructed, and he had not been arrested for anything.

According to Sergeant Raymond F. Leard, the court placed appellant on probation and assigned appellant to Leard, on Leard's recommendation, after appellant initiated a conversation with the sergeant in which he said that he would work for the State Police if Leard would "speak for him" in court. Leard initially "wasn't really interested," but agreed after appellant told Leard that he could lead Leard to "armed robbers, burglars, [and] stolen guns all through Baltimore." Thereafter, as a special condition of probation (in addition to certain general conditions of probation that were written in the probation order), the court told appellant that he was to "work with the State Police until there was satisfaction for what he was charged with, until the State Police were satisfied that he had worked out for what he was charged with." No time limit was placed; however, Leard was told to report back to the court after ninety days to inform it of the extent of appellant's cooperation. Asked at the hearing what he expected of appellant in the way of cooperation, Leard said that he "expected what [appellant] told me he was going to give me, armed robbers, burglars, stolen guns." He added, "We have a lot of information. We wanted to make actual cases."

Two days after being placed on probation, appellant began to work for the police. However, in October of 1979, Leard decided that appellant had not provided enough information, and he requested the Baltimore County State's Attorney's Office to file a petition for revocation.

The extent of appellant's cooperation with the State Police was testified to by TFC Mark Wheeler. Wheeler said that Leard assigned appellant to him on September 13, 1979, and that he and appellant started working together immediately. Wheeler related the following chronicle of events:

On their first night together, September 13, appellant led Wheeler to a subject named Kevin Pratt who was supposed to have a stolen handgun for sale. On the 14th, appellant introduced Wheeler to "other members of the criminal element." On the 17th, appellant led Wheeler to a subject named Mills who was wanted by the Baltimore City Police, and Mills was arrested. On the 18th Wheeler and appellant purchased the handgun from Pratt, but it turned out not to be stolen.

On September 20, appellant and Wheeler "gathered some intelligence" concerning alleged illegal activities of a certain motorcycle gang, but the information could never be confirmed. On the same day, appellant was with Wheeler when he became involved in a fight and incurred a head wound, rendering him unable to work for two days. On the 23rd, appellant began setting up a $20 phencyclidine buy for Wheeler, and the buy was consummated with appellant's assistance on the 25th. On the 26th, appellant led Wheeler back to Kevin Pratt for the purpose of buying marijuana, but Pratt had none. On the 27th, appellant and Wheeler went out looking for "members of the criminal element" but could not find any. On the 28th, appellant took Wheeler back to the subject who had

earlier furnished the phencyclidine for the purpose of setting up more narcotics buys as well as a buy of a handgun. On the 29th, when the buy was supposed to take place, Wheeler could not locate appellant.

On October 1, Wheeler contacted appellant and appellant said that he had spent the weekend "developing information"; however, Wheeler said, "we never could, really, do anything with" this "information." On October 3, appellant led Wheeler to a subject who was supposed to have drugs and a stolen handgun for sale. The buys were made but the "drugs" turned out to be fake and the gun again turned out not to be stolen. On the 4th, appellant led Wheeler to a group of men who discussed having a quantity of stolen guns for sale, but on the 5th, when all were supposed to meet again, neither appellant nor any of the group showed up. On October 8, 10, 11, 12, 15 and 16, Wheeler tried to locate appellant and could not.

On October 17, appellant and Wheeler were together again and appellant introduced Wheeler to some "members of the criminal element," which led to a breakfast the next day with "two members of the criminal element." During the breakfast, appellant made certain "inflammatory" comments to or about these "members of the criminal element," causing Wheeler to feel concern for his safety, and as a result Wheeler "pretty much decided not to work with [appellant] because he was putting me in obvious danger." On the 30th, appellant called to say that Kevin Pratt had been involved in a shooting. It was confirmed that Pratt had been shot and thrown from a window. Appellant was supposed to call Wheeler the next day to furnish him with tag and phone numbers of possible suspects, but did not. "From then on, it was intermittent calls."

In summary, Wheeler said that there were 14

times during the period in which he was working with appellant that he tried to locate appellant and could not, and 13 times in which he did contact appellant. Appellant gave information leading to two arrests, but did not lead Wheeler to any burglars or armed robbers, nor were any stolen weapons recovered. Wheeler acknowledged that "until we reached a certain point in time, we didn't feel that we had a problem with Mr. Hudgins in not showing up, things like that, because he had viable excuses some of the times" (for instance, appellant's telephone had been disconnected at some point during the period because appellant had not had enough money to pay his bill, thus making contact difficult). Wheeler also acknowledged that appellant had been cooperative "initially," and that he had "attempted" to assist Wheeler in the apprehension of subjects involved in armed robberies, burglaries, and the sale and transportation of stolen guns. In Wheeler's view, though, "the problem that I could see is that instead of me running the investigation, he thought that he should run it and do things the way he wanted, which it couldn't work that way."

Based on this testimony, the trial court, having concluded that petitioner breached the terms of his release, revoked his probation and ordered that the five year sentence be served.

Although Hudgins expresses several interrelated contentions as to why his freedom was impermissibly terminated, the essence of his claim is that the "special condition" of his probation requiring him to "cooperate with the Maryland State Police in tracking down criminals" was too vague to be enforceable through revocation. At the outset, it is important to bear in mind that, after guilt has been established, the granting of probation is a matter of grace and an act of clemency bestowed by the court. *Scott v. State,* 238 Md. 265, 275, 208 A.2d 575, 580 (1965). Moreover, unless the sentence is illegal, which is not the case here, "[t]he correctness

of conditions of probation must be determined on an appeal from the final judgment of conviction and sentence . . . and not on the subsequent revocation of probation," *Coles v. State,* 290 Md. 296, 303, 429 A.2d 1029, 1032 (1981). Consequently, as Hudgins here did not appeal from the imposition of his probated sentence, we do not consider the propriety of the conditions of his release as initially imposed.[1] We do recognize, however, that a probation requirement may be so amorphous that it is not reasonable to say that the defendant's complained of action was regulated by the standard of conduct imposed by the sentencing judge, thus rendering the penalty inherently incapable of enforcement. For example, in *Morgan v. Foster,* 208 Ga. 630, 68 S.E.2d 583, 584 (1952), a condition that the probationer "maintain a correct life" was determined to be "too vague, indefinite, and uncertain to be given any construction or application." This is not true here; frequently, the nature of the probationary penalty is such that the circumstances of a case, like the one we now consider, render it desirable, or perhaps necessary, that the condition of probation be expressed in somewhat general terms. Such a general expression is permissible, so long as it is contemplated that the court or its designee (usually the probation authority) will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given.[2] Thus, if the state seeks rescission of the probation, the court will be presented with a claimed violation or series of violations of explicit instructions. In this regard, we recently noted in *Coles v. State, supra,* that:

> whether a condition of probation has been violated involves "largely a question of fact." Hence, before any discretionary action [in revoking probation] is occasioned, the judge assumes the role of factfinder to determine, in the first instance, whether the

---

1. On this basis, the Court of Special Appeals in this case summarily rejected all of appellant's claims.

2. By this, we in no way imply that the specific instructions to the probationer cannot be altered as circumstances may justify.

State has met its obligation of showing that there has been a failure of compliance with a condition of probation, and if so, secondly, whether the probationer has carried his burden of establishing that the violation "resulted from factors beyond his control and through no fault of his own." [290 Md. 296, 308, 429 A.2d 1029, 1035 (1981); see in addition *Humphrey v. State,* 290 Md. 164, 167, 428 A.2d 440, 443 (1981); *Swan v. State,* 200 Md. 420, 90 A.2d 690 (1952).]

In the case now before us, there can be little doubt that Hudgins understood the import of the "special condition" of his probation. In essence, he was to supply the State Police with what information was reasonably available to him concerning criminal activity of others, and in addition, he agreed to comply with all reasonable instructions given by the police in furtherance of his role as an informant. In this regard, Hudgins claims that because there exists an inadequate basis to support the finding that he violated this "special condition," the trial court abused its discretion in revoking his probation. Although there were some general, conclusory statements before the trial court as to lack of cooperative activity with the police on the part of Hudgins, the record is silent concerning what reasonable, specific instructions, if any, were given the probationer by the police and his cooperation or failure to do so with respect to them. This evidence, in our view, should be supplied so the trial court can make an informed judgment as to whether there indeed has been a wilful failure on the part of Hudgins to abide by the conditions of his probation. If, upon this basis, the trial judge concludes that petitioner has violated the terms of his release, the court will then be called upon to exercise its discretion and determine whether to terminate the petitioner's liberty.

Accordingly, as authorized by Maryland Rule 871, without affirmance or reversal, we vacate the judgment of the Court of Special Appeals with direction that it, in turn, vacate the probation revocation order entered by the Circuit Court for

Baltimore County and require that further proceedings be conducted in accordance with this opinion. See *Wiener v. State,* 290 Md. 425, 437-38, 430 A.2d 588, 595-96 (1981).

> *Judgment of the Court of Special Appeals vacated.*
>
> *Case remanded to that Court with instructions to vacate the probation revocation order entered by the Circuit Court for Baltimore County and direct that Court to conduct a further hearing in accordance with this opinion.*
>
> *Pursuant to Maryland Rule 882f costs are not reallocated as part of the judgment of this Court.*

*Cole, J., dissenting:*

I dissent. I think the special condition of probation was invalid and I would, therefore, reverse the judgment and reinstate the probation.