## JAMES W. FISHER v. STATE OF MARYLAND

[No. 1831, September Term, 1982.]

*Decided October 11, 1983.*

The cause was submitted on briefs to WILNER and BLOOM, JJ., and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals (retired), specially assigned.

Submitted by *Alan H. Murrell, Public Defender,* and *Gary S. Offutt, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alice G. Pinderhughes, Assistant Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *Clifton Gordy, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

On February 20, 1979, appellant broke into the storehouse of one John W. Brewer and stole two pints of whiskey and a handgun. He was caught, put in jail, and ultimately charged in a six-count indictment with a variety of property offenses.

On August 24, 1979, appellant pled guilty to the fourth count of the indictment — being a rogue and vagabond — whereupon he was sentenced to three years in prison, dating from his initial incarceration on February 20. That sentence was immediately suspended, however, in favor of an equivalent term of probation. The 1979 probation order is not in the record before us, but it would appear that appellant was subjected only to the "usual" conditions listed on the printed form used by the court, and not to any "special" conditions.

Six months later — on February 21, 1980 — a warrant was issued charging appellant with violating one or more terms of his probation. On May 16, 1980, the court found that he had indeed violated the probation and reimposed the three-year sentence.[1] Once again, however, it suspended the sentence in favor of three years supervised probation. This time, in addition to the "usual" conditions, among which was that appellant "obey all laws", the court required, as a special condition, that appellant "must attend alcohol program for 2 years."

Appellant was no more successful with his second probation than he was with his first. On March 29, 1982, he was charged with failing to attend the alcohol program and failing to obey all laws. During the probationary period, it was alleged, appellant had been convicted six times in the district court of disorderly conduct. It was the latest of those convictions, occurring on October 21, 1981, that prompted the probation officer to request that the probation be terminated. The senior probation agent's evaluation, which was approved by the Field Supervisor of the Division of Parole and Probation Alcoholism Rehabilitation Unit and attached to the request for warrant, noted the following:

---

1. Neither the warrant nor a transcript of the proceeding is in the record before us. We therefore do not know the nature of the violations charged or proven.

"It is evident that Mr. Fisher has a serious alcohol problem that has not been able to be controlled through probation supervision. Prior reports dated 9/15/81 and 1/5/81 written by the previous supervising agents cited a total of 5 convictions for Disorderly Conduct from the period of 7/16/80 until 9/15/81. This report is in reference to the latest conviction of Disorderly Conduct. Both of the previous agents did not request any court action because of the lack of seriousness of the charges. However, this agent has been in regular contact with Mr. Fisher's wife and a social worker who is involved with the family and have [sic] learned that he is acting in a violent manner to his family while drinking. Although he may not be a serious threat to the public at large, he is a threat to his family.

Mr. Fisher has been in and out of jails and has also been admitted to Crownsville [2] in October of 1980. Obviously, these short periods of confinement have not served as a deterrent from being rearrested. Due to the long period of alcohol abuse, Mr. Fisher's mental capacity is limited. This agent is of the opinion that the defendant's alcoholism cannot be controlled and all alternatives to incarceration have been explored. Therefore, the undersigned is recommending that the original sentence of three years be imposed if found guilty of Violation of Probation."

The matter came before the court on December 10, 1982. The probation agent advised the court that appellant suffered from "severe alcoholism", and that the Division had attempted to treat him for that problem. She testified:

"Well, it was a condition of the subsequent probation that he receive alcohol treatment. I referred

---

2. The reference here is to Crownsville Hospital Center, a State mental health hospital. At the time, the Department of Health and Mental Hygiene maintained a unit at Crownsville for the inpatient treatment of alcoholics.

Mr. Fisher to the North Baltimore Center and he did in fact go to some of his alcohol therapy sessions, according to his counsellor, Mrs. Bailey, who I had a lot of contact with. Subsequent to that, however, he did appear in my office on two occasions in an intoxicated state and then he just stopped going to alcohol therapy altogether. Also I received phone calls from his wife indicating that he was drinking and she didn't know where he was."

Appellant readily conceded his alcoholism problem, and indeed claimed that his criminal ventures were the result of it. He told the court:

"I've been a chronic alcoholic since 1972. Most all my records have been involving disorderly conduct. It's always been when I get something to drink and I cross the street and the police officer sees me staggering across the street and charges me with disorderly conduct. I was before Miss Marian Bailey in the multi-purpose center and taking antabuse and mellaril. As soon as I stopped, I got off the alcohol for awhile. I went down there and crossed Baltimore Street one day and I really wasn't drunk, but the police officer always knows me for being drunk and he says I was drunk and locked me up for disorderly conduct. The original charge itself was for having two half pints of whiskey, why I got three years probation in the first place, two half pints of whiskey and I been arrested —"

Appellant had been in jail since November 9, 1982, apparently as the result of one of his district court appearances, and was receiving helpful therapy there. In addition to seeing a doctor and a psychologist, he was taking antabuse and mellaril. As long as he took those drugs, he said, "I don't bother with no alcohol."

The court declared the violation, which was never in much dispute. Concluding that the probationary program had not worked, and indeed had provided less help to appellant than

the therapeutic program offered by the jail, the court struck the probation and reimposed the three-year sentence with appropriate credit for both pre-trial and post-trial incarceration.

Aggrieved at the court's refusal to give him a third opportunity to roam the streets, appellant has brought this appeal, in which he makes the following three complaints:

"A. Probation should not be found to be violated and a sentence reimposed when the basis for violation is a minor offense and the reimposition of sentence is based on a need for treatment.

B. Appellant was afforded ineffective assistance of counsel.

C. Revoking Appellant's probation based upon a conviction with an illegal sentence violates the Fourteenth Amendment to the Federal Constitution."

The latter two of these complaints can be disposed of summarily. The second, as the public defender's office well knows, is an issue that this Court will not ordinarily address on direct appeal. As we have said dozens and dozens of times, where, as here, the issue of trial counsel's competence was not presented to the trial court and where, as a consequence, (1) the accused attorney has had no opportunity to defend against the charge and present his side of the story, (2) no evidence was taken on the issue, and (3) there are no factual findings by the trial court, we are incapable of properly ruling on the matter.

The third complaint rests upon the bald and wholly unsupported assertion that the sentence meted out to appellant in the district court, on one of his frequent appearances there, was illegal. The answer to the complaint is that (1) there is no evidence in the record to indicate any such illegal sentence, and (2) even if the district court had imposed an illegal sentence, it had absolutely nothing to do with the

revocation of appellant's circuit court probation.[3]

The first complaint raises a more substantial question. Alcoholism is a form of substance addiction; it is now regarded as an illness, not a crime. Yet, like addiction to other drugs and like certain forms of mental illness, it can, and often does, lead its victims into antisocial behavior that is either clearly and overtly criminal or that, perhaps out of frustration, society has chosen to deal with by application of the criminal, rather than the civil law.[4]

---

3. This Court is not unsympathetic to the dilemma faced by appellate counsel, and in particular the appellate division of the Public Defender's Office, when clients demand that certain issues be argued, notwithstanding that they are devoid of merit; and we have tried to be understanding when presented with such issues in appellate briefs. Our patience does occasionally wear thin, however; and, as our workload continues to increase, our exasperation becomes more frequent and pronounced. We invite counsel to read, and take to heart, the recent pronouncements of the Supreme Court in *Jones v. Barnes,* U.S. , 103 S.Ct. 3308 (1983), and to give somewhat more thought before presenting issues such as these, for which there is either no basis in fact, or clear, consistent, and unchallenged law to the contrary.

4. The causal relationship between substance abuse and criminal behavior has been well documented. State and national studies show that between one-half and two-thirds of the incarcerated population has a significant substance abuse problem, and that about half of the inmates were intoxicated by alcohol or drugs at the time they committed the offense for which they were incarcerated. *See, for example, Prisoners and Alcohol,* Bureau of Justice Statistics Bulletin, Jan., 1983, U.S. Dept. of Justice; *Profile of Jail Inmates: Sociodemographic Findings From The 1978 Survey of Inmates of Local Jails,* National Prisoner Statistics Report SD-NPS-J-6, NCY-65412 (Oct. 1980), U.S. Dept. of Justice; *Sourcebook of Criminal Justice Statistics,* 1980, Table 6.21, p. 500, taken from *Survey of Inmates of State Correctional Facilities* 1974, National Prisoner Statistics Special Report SD-NPS-SR-2 (1976), pp. 24, 25, 27; *Criminal Behavior of Adolescent Nonheroin Polydrug Abusers in Drug Treatment Programs,* Santo, Hooper, Friedman, and Conner, *Contemporary Drug Problems,* Fall, 1980, pp. 301, *et seq.; The Criminality of Heroin Addicts When Addicted And When Off Opiates,* Ball, Rosen, Flueck, and Nurco, published in *The Drugs-Crime Connection,* Inciardi, ch. 2.

As any district court judge knows, this is but the tip of the iceberg. Alcoholics are much more frequently seen in drunk-driving and disorderly conduct cases, where they seldom end up incarcerated. *See Judge's Guide For Alcohol Offenders,* Truax, Published by National Council on Alcoholism (1974). Although society has lately begun to regard drunk-driving in a more serious light because of the life-threatening consequences that can come of it, disorderly conduct/disturbing the peace cases are often situations of mere public nuisance. These unfortunate souls, found wandering around drunk and annoying or threatening other people, are frequently arrested and charged criminally simply to get them off the street or away from a confrontational setting that could lead to serious violence, until they regain some semblance of temporary sobriety. Whatever the reason for

Increasingly, the argument is heard that a person whose antisocial behavior is impelled by substance addiction (or mental illness) ought to be regarded as more sick than bad, and that the appropriate remedy is therapeutic treatment rather than incarceration. *That, of course, is the path twice chosen by the court in appellant's case.* What does the court do, however, when faced with the fact that the person whose continued liberty was permitted upon the condition that he accept available treatment fails to pursue the therapy offered to him? Is the court obliged to regard an addict or a person afflicted by mental illness as entirely devoid of free will so as not to be accountable for his actions? The law, wisely, does not take that approach.

The condition imposed on appellant in 1980 — that he attend an alcohol program — was a reasonable one, capable of performance. *See Judge's Guide For Alcohol Offenders,* Truax, National Council on Alcoholism (1974), pp. 13-14, 17; and *compare State v. Oyler,* 436 P.2d 709 (Idaho 1968), where a condition of total abstinence imposed on a chronic alcoholic was declared unreasonable. Such a program was indeed made available to him, and it was closely monitored by the probation agent. Appellant was not simply cut adrift, to thrash about for himself. Through regular attendance at the clinic and supervision by the probation agent, it was expected that appellant could learn to control his problem so as to avoid further infractions of the law.

The record here shows, in effect, a repudiation of the program by appellant. He stopped attending the clinic; he appeared before the probation agent intoxicated; and, as a result of his rejection of the assistance offered him, he again broke the law. This is not a case, as appellant now suggests, of instant perfection being expected, or of a probation being violated for inconsequential behavior. *Compare Swan v. State,* 200 Md. 420 (1952). Nor is it a case like *Herold v. State,* 52 Md.App. 295 (1982), where (1) the probationer was

---

selecting the criminal process for dealing with such people — and we have no doubt that there may occasionally be good reason for doing so — the fact is that many of them are in and out of the criminal side of the district court, almost as though they were caught in a revolving door.

in fact attending the counseling sessions, as ordered, and the problem seemed to be that he was not responding favorably to them, and (2) an alternative therapeutic program was offered to the court in lieu of incarceration. Appellant stated that, *while in jail,* he was taking medication, under the supervision of a doctor, that kept him away from alcohol. But the structured conditions in a jail do not necessarily pertain on the outside. If appellant was disinclined to participate in the alcohol program selected by the Division of Parole and Probation (there being no evidence that it was not an appropriate program), the court could have little confidence that appellant would continue voluntarily to take the medication or remain under the medical or psychotherapeutic care that *he* felt might keep him away from alcohol.

Upon this record, we find no abuse of discretion, and therefore no error, in the reimposition of the three-year sentence.

*Judgment affirmed; appellant to pay the costs.*