79 A.3d 967

Charles William CALLAHAN

v.

STATE of Maryland.

No. 2365, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Nov. 20, 2013.

Jeffrey M. Ross (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., BERGER, JAMES P. SALMON (Retired, Specially Assigned), JJ.

KRAUSER, C.J.

In 1995, Charles William Callahan, appellant, pleaded guilty in the Circuit Court for Anne Arundel County to kidnapping and third-degree sexual offense and was therefore sentenced to substantial terms of imprisonment for those offenses. Upon release, he was to be placed on supervised probation for a period of five years. His probation was subject to standard conditions, requiring, among other things, that Callahan report as directed to his probation agent and follow the agent's "lawful instructions."

In March 2009, Callahan was released from prison on "mandatory supervision release," subject to standard and special conditions imposed by the Maryland Parole Commission. One of the special conditions required that Callahan comply with the Division of Parole and Probation's sexual offender management program, which mandated that he submit to a polygraph test if instructed to do so. Both Callahan's mandatory supervision release and probation were monitored by the same agent within the Division of Parole and Probation.

About two and one-half years after his release from prison, Callahan was charged with violating his probation after he failed to report for a polygraph examination. A hearing followed at which the circuit court found that Callahan's

conduct amounted to a failure to follow a lawful instruction of his agent and then terminated his probation.

Callahan subsequently filed an application for leave to appeal, which we granted. The issue now before us is:

> Whether the circuit court erred in determining that the probation agent's order that Callahan submit to a polygraph test (a condition of mandatory supervision release, but not a condition of probation), was a "lawful instruction" he was required to follow as a condition of his probation.

Because the condition that Callahan submit to a polygraph test, if instructed to do so, was imposed exclusively by the Maryland Parole Commission as part of his mandatory supervision release, we conclude that the circuit court erred in revoking Callahan's probation for failing to follow the agent's instruction that he appear for a polygraph test. We, therefore, remand with the instruction that the circuit court vacate its order revoking Callahan's probation.

### BACKGROUND

In February of 1995, Callahan was charged with kidnapping, false imprisonment, assault, rape, and multiple sexual offenses. The victim of those crimes was a three-year old.

After pleading guilty to kidnapping and third-degree sexual offense,[1] the court sentenced Callahan to twenty-five years' imprisonment, with all but twenty years suspended, for the kidnapping offense and to a concurrent term of ten years for the sex offense. The court also imposed a five-year term of supervised probation upon release. The court later modified the kidnapping sentence to twenty-five years, with all but seventeen years suspended, and left intact the previously imposed order of probation.

Callahan gave his written consent to the order of probation. The "standard" conditions of that order included the following condition: "Report to your Probation Agent as directed and

---

1. The State nol prossed the remaining charges in this and other cases.

follow his/her lawful instructions." The court did not attach any "special" conditions to Callahan's probation, other than that he pay court costs and a $250 fee to the Office of the Public Defender.

On or about March 5, 2009, after serving fourteen years of his sentence and having accumulated 2,156 diminution of confinement credits, Callahan was released on mandatory supervision.[2] His release was subject to numerous conditions imposed by the Maryland Parole Commission, which were set forth in a "mandatory supervision release certificate." The certificate included standard conditions, very similar to those in the probation order, as well as a dozen special conditions.[3] One of the special conditions of his mandatory supervision release read:

Comply as directed by your parole/probation agent with the Division of Parole and Probation's sexual offender man-

---

2. "Mandatory supervision" is "a conditional release from confinement" which is mandated by statute when an inmate accrues sufficient diminution of confinement credits. *See* sections 7–101 and 7–501 of the Correctional Services Article of the Md. Code (2008 Repl. Vol.). An individual on mandatory supervision remains in legal custody until expiration of his or her full term and is subject to all laws, rules, and conditions applicable to parolees and to any special conditions imposed by a member of the Maryland Parole Commission. Corr. Serv. § 7–502.

3. Callahan's mandatory supervision release certificate included the following standard conditions:
 1. Report as directed to and follow your Parole Agent's instructions.
 2. Work Regularly.
 3. Get permission before:
 a. Changing you home;
 b. Changing your job; or
 c. Leaving the State of Maryland.
 4. Obey all laws.
 5. Notify your Parole Agent immediately if you are arrested.
 6. You shall not illegally possess, use or sell or have under your control any narcotic drug, "controlled dangerous substance," or related paraphernalia.
 7. You shall not own, possess, use, sell, or have under your control any dangerous weapon or firearms of any description without approval of the Maryland Parole Commission.
 8. You shall so conduct yourself as not to present a danger to yourself or others.

agement program, which may include intensive reporting requirements, specialized sex offender treatment, electronic monitoring, medication, polygraph testing, and computer monitoring.

The mandatory supervision release certificate also contained an acknowledgment by Callahan that a violation of a condition could result in the Commission's revocation of his conditional release. The acknowledgment provided:

I have read, or have had read to me, this certificate, including the reverse side which lists the standard conditions of mandatory supervision as well as any **special conditions as established by a Commissioner of the Maryland Parole Commission.** I understand my obligation to abide by all conditions and that I will be deemed as if released on parole. **I will remain under the supervision of the Division of Parole and Probation,** subject to the same laws, rules and regulations and conditions that apply to parolees, **until my term of confinement expires.**[4]

I hereby waive extradition to the State of Maryland and expressly agree that I will not contest any effort to return me to the State of Maryland in consequence of my violating any of the terms and conditions of this mandatory supervision release. **I fully understand that my violation of any of these terms and conditions may result in the revocation of my mandatory supervision release by the Maryland Parole Commission** and the taking of all diminution of confinement credits I earned as of the date of my release under mandatory supervision.

(Emphasis added.)

Both Callahan's mandatory supervision release and his court ordered probation were supervised by the Division of Parole and Probation, Sex Offender Unit, and within that unit by the same agent. Although initially supervised by Agent

---

**4.** The mandatory supervision release certificate provided that Callahan's "maximum expiration date" of his "term of confinement" was January 29, 2015.

Stuart Walker, Callahan's supervision was transferred in July 2011 to Agent Marsha Briley–Mays.

On August 2, 2011, at his weekly meeting with Agent Briley–Mays, the agent instructed Callahan to report to the Maryland State Police Barracks on Kelso Drive in Baltimore at 10:00 a.m. on August 8, 2011, for a polygraph examination.[5] Agent Briley–Mays then handed Callahan a letter that contained those same instructions and that further advised Callahan that his "[f]ailure to report [for the polygraph test] may result in a Violation of Probation and a warrant being issued."

On August 8, 2011, Sergeant Jim Mitchell of the Maryland State Police informed Agent Briley–Mays that Callahan had failed to report for the scheduled polygraph examination. On that same day, a "retake warrant"[6] was issued, and Callahan was arrested and returned to the custody of the Department of Corrections.[7]

Agent Briley–Mays then requested a violation of probation warrant. The "Statement of Charges" attached to the warrant alleged that Callahan had "violated the following conditions of supervision":

1. REPORT TO YOUR PROBATION AGENT AS DIRECTED AND FOLLOW HIS/HER LAWFUL INSTRUCTIONS.

 By failing to report as instructed by this Agent to the Maryland State Police Barracks for a polygraph examination on 8/8/2011.

---

**5.** Callahan had submitted to a polygraph examination on two previous occasions while on mandatory supervision release.

**6.** The Division of Parole and Probation is required by statute to "issue a warrant for the retaking of an offender charged with a violation of a condition of parole or mandatory supervision." *Corr. Serv.* § 6–104(a)(1)(iv).

**7.** On December 5, 2011, when Callahan appeared in court for his violation of probation disposition, his counsel informed the court that, because of his failure to report for the polygraph examination, he had appeared for a parole retake proceeding, lost 1,500 diminution of confinement credits and had been returned to prison.

By failing to adhere to the conditions of his mandatory release order and the state and federal laws as instructed by this Agent, treatment providers and any other representative who has engaged Mr. Callahan during his community supervision.

On 8/2/2011, this Agent verbally and in writing advised Mr. Callahan that he was scheduled for a polygraph examination on 8/8/2011 at 10:00 am located [sic] the Maryland State Police Barracks located [sic] 8909 Kelso Drive Baltimore, Maryland 21221. This Agent was advised by Sgt. Mitchell via telephone that Mr. Callahan failed to report.

3. OBEY ALL LAWS.

By admitting to having possession of child pornography. During sex offender counseling, Mr. Callahan admitted to his counselor Dr. Baccus, to having child pornography in his possession.

By failing to adhere to the conditions and guidelines set forth by the Maryland Parole Commission.

Mr. Callahan is required as a condition of his mandatory release to adhere to policies and laws which govern the supervision of sex offenders in Maryland. Mr. Callahan failed to report for a polygraph examination as instructed and mandated in his Mandatory Release Order. Furthermore, by failing to report for the scheduled polygraph and having child pornography in his possession, Mr. Callahan has conducted himself in [sic] manner which poses a danger to his community and public safety which also violates a condition of his mandatory release.

On October 24, 2011, the circuit court convened a violation of probation hearing, but, notwithstanding the allegation of possession of child pornography, the only probation violation that was addressed at the hearing was Callahan's failure to follow Agent Briley–Mays's instruction that he report for a polygraph test. When the hearing commenced, Agent Briley–Mays testified that Callahan had not reported to the Maryland State Police Barracks for the polygraph examination sched-

uled for August 8th, despite her instruction to Callahan to do so.

Although Callahan's counsel conceded that, by failing to report for the polygraph test, Callahan had violated a condition of his mandatory supervision release, he insisted that, because the court's probation order did not require him to submit to such testing, Callahan could not be found in violation of probation for failing to comply with Agent Briley–Mays's polygraph instruction. The court disagreed, stating:

> The question before the Court is whether or not the Defendant violated his probation for failing to follow the lawful order of his probation agent. It's not whether or not he failed to take a polygraph, it's whether or not he followed a lawful order of his agent.

> And when I look at the conditions of the mandatory supervision form and which the Defendant signed, the— under special conditions of mandatory supervision release number 34 indicates "comply as directed by your parole and/or probation agent with the Division of Parole and Probation Sex Offender and Management Program, which may include intensive reporting requirements, specialized sex offender treatment, electronic monitoring, medication, polygraph testing, and computer monitoring," and as such I believe that the agent's instruction, his probation agent's instructions that he report for a polygraph exam was a lawful order that she was permitted to make and that the Defendant failed to comply with a lawful order.

The court then terminated Callahan's probation, and at a subsequent disposition hearing ordered that Callahan serve the remainder of his twenty-five year sentence.

## DISCUSSION

■ Callahan claims that, by "meld[ing] together a probation order and parole order to form the legal basis for its ruling that appellant violated his probation," the circuit court "violate[d] the separation of powers doctrine" and "exceed[ed] the scope of the court's sentencing authority under the proba-

tion order."[8] The State simply counters that the agent's directive that Callahan report for the polygraph examination was a lawful instruction and that the circuit court correctly concluded that his failure to follow that directive violated the first condition of his probation.

 We begin our review of Callahan's claim with the observation that, "[a] court's decision to revoke probation must be based on the violation of a valid condition of probation." *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165 (1986). To be valid, conditions of probation "must be reasonable and have a rational basis." *Watson v. State*, 17 Md.App. 263, 274, 301 A.2d 26, *cert. denied*, 268 Md. 754 (1973). And they "must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement." *Id.*

The condition at issue here was a standard condition in the circuit court's order of probation which read: "Report to your Probation Agent as directed and follow his/her lawful instruc-

---

8. Callahan also contends that any requirement for polygraph testing stemming from the sex offender registration requirements, set forth in Crim. Proc., §§ 11–701 et seq. of the Maryland Code, violated his due process rights and the *ex post facto* clauses of the Maryland and United States constitutions. Those issues, however, are not before us because the circuit court clearly found Callahan in violation of the first condition of the 1995 order of probation when he failed to comply with the agent's directive to take a polygraph test—a condition of his 2009 mandatory supervision release. The record is clear that the statutory provisions related to sex offender registration and lifetime sexual offender supervision were not raised below and did not enter into the court's decision to revoke Callahan's probation. We, therefore, will not address Callahan's due process and *ex post facto* claims nor comment on whether Callahan was subject to polygraph examination pursuant to Crim. Proc., § 11–723(d). We note, however, that there is nothing in the record before us that indicates that the *court*, at any time, imposed any special conditions of lifetime sexual offender supervision upon Callahan.

Callahan also argues that, because appellant's plea agreement "did not include any provisions for polygraph testing," the circuit court's "reliance on the polygraph testing condition contained in the public order ha[d] the effect of altering the terms of the binding plea agreement to the detriment of Appellant." That issue, however, was neither raised nor decided below and, therefore, is not before us.

tions." And, Callahan's mandatory supervision release certificate contained a similar condition: "Report as directed to and follow your Parole Agent's instructions." Thus, the conditions of Callahan's mandatory supervision release and his probation appear, to some extent, to overlap.

But that does not mean, as we shall see, that they then can be conflated. Indeed, mandatory supervision release is obviously much more in the nature of parole than in the nature of probation. In fact, the only significant difference between the two appears to be that parole is granted at the discretion of the Maryland Parole Commission while mandatory supervision release is mandated by statute when certain conditions are met. Therefore, what we said of probation and parole in *Simms v. State*, 65 Md.App. 685, 501 A.2d 1338 (1986), applies to probation and mandatory supervision release. That is to say, that, although probation and parole may share "some of the same characteristics," they "are quite different things." *Id.* at 688, 501 A.2d 1338. "Placing a convicted person on probation," we noted, "is a peculiarly judicial act . . . a part of the sentencing function." *Id.* at 688–689, 501 A.2d 1338. Indeed, it is, in essence, we explained, "an act of clemency bestowed *by the court.*'" *Id.* at 689, 501 A.2d 1338 (quoting *Hudgins v. State*, 292 Md. 342, 347, 438 A.2d 928 (1982) (emphasis added in *Simms* )).

In contrast, like parole, mandatory supervision release "is a purely executive function, the exercise of which must be, and by statute is, committed to an executive agency—the Maryland Parole Commission." *Id.; Hillard v. State*, 141 Md.App. 199, 210, 784 A.2d 1134 (2001) ("Mandatory release under Corr. Serv. § 7–501, like parole, is uniquely an executive function and the enforcement and regulation thereof is vested solely within the Division of Parole and Probation."). *See also,* Corr. Serv. § 7–501 (requiring the Division of Correction to grant a conditional release from confinement to inmates who have met certain conditions); § 7–502 (providing that an individual on mandatory supervision release remains in legal custody until his or her full term expires and during that

time is subject to all laws, rules, regulations, and conditions that apply to parolees, as well as to any special conditions established by a commissioner of the Maryland Parole Commission); and § 7–504 (providing that revocation of mandatory supervision release lies with the Maryland Parole Commission). Because parole, as we stressed in *Simms*, "does not involve the sentencing function or any other judicial function," 65 Md.App. at 689, 501 A.2d 1338, it follows that "only the Parole Commission and not the trial court [can] enforce a condition of parole." *Id.* at 690, 501 A.2d 1338. *See also, Nimon v. State*, 71 Md.App. 559, 562, 526 A.2d 645 (1987) (holding that a court "cannot exercise a non-judicial function and is precluded from imposing parole conditions.").

Here, it is undisputed that polygraph testing was a special condition placed by the Maryland Parole Commission on Callahan's mandatory supervision release and not a judicially imposed condition of probation. It is also undisputed that the court did not terminate Callahan's probation because he failed to report for a polygraph test, but rather because he failed to follow the "lawful instruction" of his supervising agent to do so. The question before us, then, is whether the agent's instruction to report for polygraph testing was a "lawful instruction" that Callahan was required to follow to remain compliant with the conditions of his probation.

There is a dearth of case law addressing the standard condition of probation that requires an individual to follow the supervising agent's "lawful instructions." But in *Phelps v. State*, 17 Md.App. 341, 303 A.2d 430 (1973), this Court did address a somewhat similar standard condition then in force, that the probationer "report promptly to the probation agent . . . whenever instructed to do so" and "conform to all rules of conduct imposed by the probation agent." *Id.* at 343, 303 A.2d 430. In that case, Mary Phelps was convicted of a controlled dangerous substance offense and sentenced to four years of incarceration, all of which was suspended, and a term of probation. *Id.* at 342, 303 A.2d 430. While on probation, Phelps' urine sample tested positive for drugs, whereupon her probation agent instructed her to enroll in a narcotic thera-

peutic community. *Id.* at 343, 303 A.2d 430. Later, when Phelps left the program without permission, she was found to have violated the condition of probation that required her to "conform to all rules of conduct imposed by the probation agent" and ordered to serve her suspended sentence. *Id.*

Concluding that the court had "construed" the condition "too broadly," we reversed, explaining:

> While we need not undertake to define its scope, it appears to apply to day to day supervision of a probationer's conduct in his home environment, including required or prohibited activities. **If a probationer must, without limitation, "conform to all rules of conduct imposed by the probation agent," then the other 11 general conditions, and any special conditions, would be superfluous.** A requirement for custodial care or treatment of an institutional nature should be imposed only by the court, and not, as a rule of conduct, by the probation agent.

*Id.* at 344, 303 A.2d 430 (emphasis added).

More than a decade later, in *Costa v. State*, 58 Md.App. 474, 473 A.2d 942 (1984), we addressed the standard condition of probation as it was worded here—that the probationer report as directed and follow the supervising agent's "lawful instructions." *Id.* at 478, 473 A.2d 942. In that case, Robert Costa was convicted of a controlled dangerous substance offense and sentenced to a term of five years of incarceration, all of which were suspended. The court also imposed a five-year period of probation subject to standard conditions and the special condition that he be placed under "intensive supervision." *Id.* at 476, 478, 473 A.2d 942. While on probation, Costa was charged with a violation of that probation for, among other things, failing to participate in drug therapy as directed by his agent. *Id.* at 478, 473 A.2d 942. Drug therapy, however, was not, a condition of probation. *Id.* at 482, 473 A.2d 942. Nonetheless, Costa was found to have violated his probation and ordered to serve the suspended sentence. *Id.* at 476, 473 A.2d 942.

On appeal, Costa contended that his agent lacked the authority to order him to attend drug therapy. *Id.* at 478, 473 A.2d 942. This Court agreed and vacated the court's order finding a violation of probation and striking the suspended sentence, stating: "Although [the probation agent's] well-intentioned drug therapy requirement, in view of Costa's past conduct, was a 'lawful instruction' in and of itself, it lacked the support of being within the ambit of any general condition imposed by the Court." *Id.* at 483, 473 A.2d 942. We then held that, "as the order of the probation officer directing [Costa] to participate in drug therapy was beyond the general or special terms of probation, and therefore without proper authority of the sentencing judge, it was improper." *Id.* at 484, 473 A.2d 942.

■ *Phelps* and *Costa* promote the principle that the directives given by a probation agent must be in relation to a general or special condition *imposed by the sentencing court.* In other words, the condition that the probationer must follow his agent's "lawful instructions" is not boundless. While a probation agent may establish specific "rules" to ensure the probationer's compliance with general or special conditions of probation, the agent may not "impose new, more onerous conditions on its own that are not fairly within the ambit of those laid down by the court." *Edwards v. State,* 67 Md.App. 276, 281, 507 A.2d 212 (1986).

Here, unlike in *Phelps* and *Costa,* the supervising agent's instruction that Callahan report for a polygraph examination was not a requirement manufactured by the agent. Polygraph testing, as noted, was a special condition of his mandatory supervision release and Callahan's probation and mandatory supervision were monitored by the same agent. Nonetheless, given the clear distinction between mandatory supervision release and probation, we hold that the court erred in revoking Callahan's probation for failing to follow the agent's instruction to report for a polygraph test as that directive was a "new, more onerous condition" that was "not fairly within the

ambit of those laid down by the court." *Edwards, supra,* 67 Md.App. at 281, 507 A.2d 212.

To hold otherwise, as Callahan aptly stated in his brief, would have "the effect of treating the first condition of probation as an incorporation mechanism whereby every condition of parole [or mandatory supervision release] becomes a condition of probation." And that would clearly be contrary to the separation of powers doctrine, as mandatory supervision release is the domain of the executive branch of government and probation lies with the judicial branch.[9] Thus, while Callahan's failure to follow the supervising agent's instructions to report for a polygraph examination was a violation of a condition of his mandatory supervision release, it was not under these circumstances, as the circuit court concluded, a violation of the condition of his probation that required him to follow the lawful instructions of his agent.

**ORDER OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FINDING VIOLATION OF PROBATION AND ORDERING EXECUTION OF PREVIOUSLY SUSPENDED SENTENCE VACATED.**

**COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**

---

9. As this Court observed in *Simms v. State,* 65 Md.App. 685, 501 A.2d 1338 (1986), "Maryland Declaration of Rights, art. VIII provides not only that the legislative, executive, and judicial powers of the State government should be 'forever separate and distinct from each other' but that 'no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.' " *Id.* at 690, 501 A.2d 1338.